**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT DEVEREAUX, Derivatively On Behalf Of BAKKT HOLDINGS, INC. (F/K/A VPC IMPACT ACQUISITION HOLDINGS), | Case No.:   23-01329 |
| Plaintiff, | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |
| vs. | **JURY DEMANDED** |
| GAVIN MICHAEL, DAVID CLIFTON, SEAN COLLINS, KRISTYN COOK, MICHELLE GOLDBERG, RICHARD LUMB, ANDY MAIN, GORDON WATSON, DE'ANA DOW AND JILL SIMEONE, | |
| Defendants, | |
| -and- | |
| BAKKT HOLDINGS, INC. (F/K/A VPC IMPACT ACQUISITION HOLDINGS), | |
| Nominal Defendant. | |

Plaintiff Robert Devereaux ("Plaintiff"), by and through his undersigned counsel, derivatively on behalf of Nominal Defendant Bakkt Holdings, Inc. ("Bakkt" or the "Company") f/k/a VPC Impact Acquisition Holdings ("VIH"), submits this Verified Shareholder Derivative Complaint (the "Complaint"). Plaintiff's allegations are based upon his personal knowledge as to himself and their own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Bakkt with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record. Plaintiff believes that substantial evidentiary support will exist for the

allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTTION

1.     This is a shareholder derivative action brought on behalf of and for the benefit of the Company, against certain of its officers and/or directors named as defendants herein seeking to remedy Defendants (defined below) violations of law, and their breaches of fiduciary duties and other wrongful conduct as alleged herein.  Defendants' actions have caused, and will continue to cause, substantial financial harm and other damages to the Company, including damages to its reputation and goodwill.

2.     Bakkt was formerly known as "VPC Impact Acquisition Holdings" and operated as a special purpose acquisition company ("SPAC"). SPACs are also called "blank-check companies", which are development stage companies with no specific business plan or purpose or one that has indicated its business plan is to engage in a merger or acquisition with an as yet unidentified other company.

3.     On January 11, 2021, the Company and the original, privately held Bakkt entity ("Legacy Bakkt") announced entry into a definitive agreement for a business combination ("Business Combination") that would result in Legacy Bakkt becoming a publicly traded company with an enterprise value of approximately $2.1 billion.

4.     On March 31, 2021, the Company filed a registration statement on Form S-4 with the SEC in connection with the Business Combination, which, after amendments, was declared effective by the SEC on September 17, 2021 (the "Registration Statement"). Also on September 17, 2021, the Company filed a proxy statement and prospectus on Form 424B3 with the SEC in connection with the Business Combination, which formed part of the Registration Statement (the "Proxy" and, together with the Registration Statement, the "Offering Documents")

5.      On or about October 15, 2021, the Company and Legacy Bakkt completed the Business Combination pursuant to the Offering Documents. Thereafter, the Company changed its name to "Bakkt Holdings, Inc." and began operating a digital asset platform that enables consumers to buy, sell, convert, and spend digital assets.

6.      The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their proper preparation. Throughout the time in issue, Defendants also made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company had defective internal financial controls; (ii) as a result, there were errors in the Company's financial statements related to the misclassification of certain shares issued prior to the Business Combination; (iii) accordingly, the Company would need to restate certain of its financial statements; (iv) the Company downplayed the true scope and severity of these issues; (v) the Company overstated its remediation of its defective internal financial controls; and (vi) as a result, the Offering Documents and Defendants' public statements throughout the time in issue, were materially false and/or misleading and failed to state information required to be stated therein.

7.      On May 17, 2021, Bakkt—then still operating as VIH—notified the SEC of its inability to timely file its quarterly report for the quarter ended March 31, 2021.  Specifically, the Company advised that, as a result of a statement issued by the SEC, "the Company reevaluated the accounting treatment of its public warrants and private placement warrants" and "is currently determining the extent of the SEC Statement's impact on its financial statements[.]"

8.      On this news, the Company's share price fell $0.13 per share, or 1.26%, to close at $10.18 per share on May 18, 2021.

9.      Then, on October 13, 2021, the Company disclosed in an SEC filing that it had also previously failed to properly account for the classification of its Class A ordinary shares and "adjust[ed] . . . the initial carrying value of the Class A ordinary shares subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and Class A ordinary shares." Notably, the Company revised its balance sheet as of December 31, 2020, including, among other changes, additional paid-in capital that was reduced from $9,860,338 to nil, an accumulated deficit that ballooned from $4,861,190 to $29,250,419, and total shareholders' *equity* of $5,000,009 that swung to a total shareholders' *deficit* of $29,249,901.

10.     Following these additional disclosures, the Company's share price fell $0.47 per share, or 4.73%, to close at $9.46 per share on October 14, 2021.

11.     Finally, on November 22, 2021, Bakkt disclosed in another SEC filing that the Company's management "has re-evaluated . . . the accounting classification of the Class A ordinary shares . . . of [VIH] . . . and has identified errors in the historical financial statements of VIH . . . related to the misclassification . . . of the Class A Ordinary Shares prior to the [Business Combination]." Specifically, the Company found that, as a result of errors in its condensed consolidated financial statements for the year ended December 31, 2020, and the quarterly periods ended March 31, 2021, June 30, 2021 and September 30, 2021, Bakkt should "restate certain of VIH's condensed consolidated financial statements from" those periods.

12.     On this news, Bakkt's stock price fell $2.70 per share, or 13.69%, to close at $17.02 per share on November 22, 2021.

**JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 10(b) of the Exchange Act, 15. U.S.C. § 78j(b), and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f).  This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

14.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

15.     Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because: (i) one or more of the defendants resides in this District; (ii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; and (iii) Defendants received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**PARTIES**

**Plaintiff**

16.     Plaintiff acquired the Company securities during the time in issue and will continue to hold his Bakkt shares throughout the pendency of this action.  Plaintiff will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

**Nominal Defendant**

17.     Nominal Defendant Bakkt is a Delaware corporation with principal executive offices located at 10000 Avalon Boulevard, Suite 1000, Alpharetta, Georgia 30009. The

Company's Class A common stock and warrants trade on the NYSE under the trading symbols "BKKT" and "BKKT WS", respectively. Prior to the Business Combination, the Company was organized under the laws of the Cayman Islands with principal executive offices located at Victory Park Capital Advisors, LLC, 150 North Riverside Plaza, Suite 5200, Chicago, Illinois 60606, and the Company's units, Class A ordinary shares, and warrants traded on the Nasdaq Stock Market ("NASDAQ") under the trading symbols "VIHAU", "VIH", and "VIHAW", respectively.

**Director Defendants**

18.     ***Defendant Gavin Michael*** ("Michael") has served as Chief Executive Officer ("CEO") and a director of Bakkt since the closing of the Business Combination.  Defendant Michael has served as President since December 2021. Defendant Michael served in the same role at Bakkt Opco Holdings, LLC (f/k/a/ Bakkt Holdings, LLC ("Opco")) from January 2021 until the closing of the Business Combination. Defendant Michael resides in the State of New York.

19.     ***Defendant David Clifton*** ("Clifton") served as Interim Chief Executive Officer for Opco from April 2020 to January 2021 and is currently a Director of the Company. While serving in this role, Clifton was involved in the development of strategy and the assessment of its strategic alternatives, which resulted in the recent Business Combination.

20.     ***Defendant Sean Collins*** ("Collins") is the Chairman of the Board and served on the board of managers of Opco since its inception in December 2018 until the closing of the Business Combination.

21.     ***Defendant Kristyn Cook*** ("Cook") was a director of the Company until her departure on or about December 31, 2022, but prior to her departure from the Company, she participated in the decision to refuse the litigation demand tendered to the Company by the Plaintiff.

22.    **Defendant Michelle Goldberg** ("Goldberg") is a director of the Company.

23.    **Defendant Richard Lumb** ("Lumb") is a director of the Company.

24.    **Defendant Andy Main** ("Main") is a director of the Company.

25.    **Defendant Gordon Watson** ("Watson") is a director of the Company.

26.    **Defendant De'Ana Dow** ("Dow") is a director of the Company.

27.    **Defendant Jill Simeone** ("Simeone') is a director of the Company. Defendant Simeone resides in this District.

28.    Defendants Michael, Clifton, Collins, Cook, Goldberg, Lumb, Main, Watson, Dow, and Simeone are herein referred to collectively as "Defendants."

## THE COMPANY'S CORPORATE GOVERNANCE

29.    As members of Board, the Defendants were held to the highest standards of honesty and integrity and charged with overseeing the Company's business practices and policies and assuring the integrity of its financial and business records.

30.    The conduct of the Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Bakkt, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its investors that the Director Defendants were aware posed a risk of serious injury to the Company

## DUTIES OF THE DIRECTOR DEFENDANTS

31.    By reason of their positions as officers, directors, and/or fiduciaries of Bakkt and because of their ability to control the business and corporate affairs of Bakkt, the Defendants owed the Company and its shareholders the fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Bakkt in a fair, just, honest, and equitable manner.  The Defendants were and are required to act in furtherance of

the best interests of Bakkt and its shareholders.

32.     Each director and officer of the Company owes to Bakkt and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's operations, internal controls, finances, financial condition, and present and future business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

33.     The Defendants, because of their positions of control and authority as directors and/or officers of Bakkt, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with Bakkt, each of the Defendants had access to adverse non-public information about the internal controls, financial condition, operations, accounting practices, sales and marketing practices, and public representations made by the Company.

34.     To discharge their duties, the officers and directors of Bakkt were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the financial and accounting affairs of the Company.  By virtue of such duties, the officers and directors of Bakkt were required to, among other things:

(a)     Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b)     Conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     Properly and accurately guide investors and analysts as to the true financial and accounting condition of the Company at any given time, including making accurate statements about the Company's business prospects and accounting policies, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d)     Remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(e)     Ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(f)     Ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

35.     Each Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.

36.     The conduct of the Defendants complained of herein involves a knowing and

culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Defendants were aware or should have been aware posed a risk of serious injury to the Company.

37.     The Defendants breached their duties of loyalty and good faith as set forth herein. The Defendants' subjected the Company to the costs of defending, and the potential liability from, a class action asserted against the Company for violation of the securities laws.  As a result, the Company has expended, and will continue to expend, significant sums of money.

38.     The Defendants' actions have irreparably damaged the Company's corporate image, goodwill and standing in the financial community.

## AUDIT COMMITTEE

39.     The purpose of the Audit Committee is to assist the Board in overseeing and monitoring: (i) the quality and integrity of the Company's financial and accounting statements; (ii) the Company's compliance with legal and regulatory requirements; (iii) the Company's independent registered public accounting firm's qualifications and independence; (iv) the performance of the Company's internal audit function; and (v) the performance of the Company's independent registered public accounting firm.

## FACTS

### Background

40.     VIH was incorporated in the Cayman Islands on July 31, 2020 as a blank check company for the purpose of effecting a merger, share exchange, asset acquisition, share purchase, reorganization, or similar business combination with one or more businesses.  Specifically, VIH was a SPAC.  SPACs are companies without commercial operations that are formed to raise capital

in order to acquire or merge with an existing private company, thereby allowing the private company to become a publicly-traded one.

41.     On September 22, 2020, VIH concluded its initial public offering of 20,000 units, each consisting of one Class A ordinary share and one-half of one redeemable warrant (with each whole warrant entitling the holder thereof to purchase one Class A ordinary share for $11.50 per share, subject to adjustment).

42.     VIH's IPO generated gross proceeds of $200 million. VIH's Class A ordinary shares and warrants traded on the NASDAQ Capital Market.

43.     At the same time as VIH's initial public offering, VIH completed the private sale of 6,000,000 warrants to its sponsor at a purchase price of $1.00 per warrant, generating an additional gross proceeds of $6 million.

44.     On January 11, 2021, the Company and Legacy Bakkt announced entry into a definitive agreement for the Business Combination that would result in Legacy Bakkt becoming a publicly traded company with an enterprise value of approximately $2.1 billion.

45.     On March 31, 2021, the Company filed the Registration Statement on Form S-4 with the SEC in connection with the Business Combination, which, after several amendments, was declared effective by the SEC on September 17, 2021.

46.     Also on September 17, 2021, the Company filed the Proxy on Form 424B3 with the SEC in connection with the Business Combination, which formed part of the Registration Statement.

47.     On or about October 15, 2021, the Company and Legacy Bakkt completed the Business Combination pursuant to the Offering Documents. Thereafter, the Company changed its name to "Bakkt Holdings, Inc." and began operating a digital asset platform that enables

consumers to buy, sell, convert, and spend digital assets.

48.     On January 11, 2021, VIH issued a press release announcing that it entered into a definitive agreement for the merger with Legacy Bakkt that would result in Bakkt becoming a publicly traded company with an enterprise value of approximately $2.1 billion. The combined company would be renamed Bakkt Holdings, Inc. and would be listed on the NYSE. The press release also stated:

**Key Transaction Terms**

The business combination values the combined company at an enterprise value of approximately $2.1 billion and is expected to result in over $500 million of cash on the combined company's balance sheet, reflecting a contribution of up to $207 million of cash held in VIH Impact Acquisition Holdings' trust account, and a $325 million concurrent private placement (PIPE) of Class A common stock of the combined company, priced at $10.00 per share, including a $50 million contribution from ICE.

As part of the transaction, Bakkt's existing equity holders and management will roll 100% of their equity into the combined company. Assuming no shareholders of VIH exercise their redemption rights, current Bakkt equity holders will own approximately 78%, VIH public shareholders will own approximately 8%, VIH will own approximately 2%, and PIPE investors (a group that will include ICE) will own approximately 12% of the combined company (through an Up-C structure described below) at closing.

In connection with the business combination, VIH will change its jurisdiction of incorporation from the Cayman Islands to the State of Delaware. The business combination has been structured as an "Up-C" where former Bakkt equity owners will retain their equity interests in Bakkt and will receive non-economic voting shares of the combined company at closing. The combined company will also enter into a customary tax receivable arrangement with the current equity holders of Bakkt, which will provide for the sharing of certain tax benefits as realized by the combined company.

The proposed business combination has been unanimously approved by the Boards of Directors of Bakkt and VIH, is subject to approval by VIH's shareholders, regulatory approvals and other customary closing conditions. The business combination is expected to close in the second quarter of 2021.

A more detailed description of the business combination terms and a copy of the Agreement and Plan of Merger will be included in a current report on Form 8-K

to be filed by VIH with the United States Securities and Exchange Commission (the "SEC"). VIH will file a registration statement (which will contain a proxy statement/prospectus) with the SEC in connection with the business combination.

## Registration Statement

49.     On March 31, 2021, after the market closed, VIH filed a registration statement with the SEC on Form S-4 in connection with the merger (previously defined as the Registration Statement). The Registration Statement registered 25,921,502 Class A common shares, which consisted of 20,737,202 Class A ordinary shares issued in its IPO registered on Form S-1 (SEC File No. 333-248619) and 5,184,300 Class B ordinary shares. As a result of domestication, the Class A and Class B ordinary shares would automatically convert, by operation of law, into shares of Class A common stock.

## Pre-Merger Restatement of Financial Information

50.     On April 12, 2021, the SEC published its "Staff Statement on Accounting and Reporting Considerations for Warrants Issued by Special Purpose Acquisition Companies ("SPACs")" (the "SEC Warrant Statement"). The SEC Warrant Statement stated that, in light of "certain terms that may be common in warrants included in SPAC transactions," the warrants issued by most SPACs must be classified as liabilities rather than equity, with the liability measured at fair value, with changes in fair value each period reported in earnings. The SEC Warrant Statement further advised SPACs that, if they had accounted for their warrants improperly, they must consider whether to restate any previously-issued financial statements.

51.     The SEC Warrant Statement also advised, in pertinent part, that SPACs:

> should consider their obligation to maintain internal controls over financial reporting and disclosure controls and procedures to determine whether those controls are adequate. ***Registrants and their advisors should also assess whether prior disclosure on the evaluation of internal controls over financial reporting and***

> ***disclosure controls and procedures needs to be revised in the amended filings. Such an analysis would necessarily include consideration of whether there is a control deficiency or deficiencies and an evaluation of the severity of any control deficiency, individually or in the aggregate. The evaluation of the severity of any control deficiency should not be limited to the actual misstatement that occurred or whether that misstatement was material, but instead should consider the magnitude of the potential misstatement resulting from the deficiency or deficiencies, amongst other considerations.***

(Emphasis added.)

**Amended 2020 Annual Report**

52.     After the publication of the SEC Warrant Statement, VIH determined that it had previously improperly classified its warrants as equity rather than as liabilities.

53.     On May 17, 2021, VIH filed Form NT 10-Q with the SEC alerting regulators and the market that it could not timely file its Quarterly Report for the fiscal quarter ended March 31, 2021. VIH disclosed that "the Warrants should be, and should previously have been, classified as a liability measured at fair value, with non-cash fair value adjustments recorded in earnings at each reporting period," and stated that it was working diligently to "determine[e] the extent of the SEC Statement's impact on its financial statements" and file the quarterly report as soon as practicable

54.     On May 21, 2021, VIH filed an amended Annual Report on Form 10-K for the year ended December 31, 2020 (the "Amended 2020 Annual Report") restating the company's warrants as a liability instead of equity and disclosing a material weakness in internal controls over financial reporting.

55.     The Amended 2020 Annual Report stated, in relevant part:

Due to the recurring fair value measurement, we expect that we will recognize non-cash gains or losses on our warrants each reporting period and that the amount of such gains or losses could be material. The impact of changes in fair value on earnings may have an adverse effect on the market price of our ordinary shares. In addition, potential targets may seek a special purpose acquisition company that

does not have warrants that are accounted for as liability, which may make it more difficult for us to consummate an initial business combination with a target business.

. . .

As described elsewhere in this Annual Report, ***we identified a material weakness in our internal control over financial reporting related to the accounting for a significant and unusual transaction related to the warrants we issued in connection with our initial public offering in September 2020***. As a result of this material weakness, our management concluded that our internal control over financial reporting was not effective as of December 31, 2020. This material weakness resulted in a material misstatement of our warrant liabilities, change in fair value of warrant liabilities, Class A common stock subject to possible redemption, additional paid-in capital, accumulated deficit and related financial disclosures as of and for the period ended December 31, 2020 (the "Affected Period").

To respond to this material weakness, we have devoted significant effort and resources to the remediation and improvement of our internal control over financial reporting . . . .

(Emphasis added.)

56.     The Amended 2020 Annual Report disclosed material changes to VIH's balance sheet due to the reclassification of VIH's warrants, including Class A ordinary shares subject to possible redemption in the amount of $173,122,110, additional paid-in capital of $9,860,338, and an accumulated deficit of $4,861,190.

57.     VIH assured shareholders and investors that its conclusion that its internal control over financial reporting was not effective as of December 31, 2020 was "due solely to the material weakness" concerning accounting for the "significant and unusual transaction related to the warrants" issued in VIH's initial public offering.

58.     VIH further stated that "[m]anagement has implemented remediation steps to address the material weakness and to improve our internal control over financial reporting. Specifically, we expanded and improved our review process for complex securities and related

accounting standards."

59.     In connection with the reclassification of Warrants from equity to liabilities, the Amended 2020 Annual Report reported a loss of ***$3,090,130*** arising from a change in the fair value of warrant liabilities for the period from July 31, 2020 (inception) through December 31, 2020, which contributed to a net loss of $4,861,190 for that period.

60.     The Amended 2020 Annual Report stated, in reference to the Class A ordinary shares subject to possible redemption, as follows:

> ***Class A Ordinary Shares Subject to Possible Redemption***
> ***We account for our Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."*** Class A ordinary shares subject to mandatory redemption is classified as a liability instrument and is measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that features redemption rights that is either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within our control) is classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. ***Our ordinary shares feature certain redemption rights that are considered to be outside of our control and subject to occurrence of uncertain future events. Accordingly, Class A ordinary shares subject to possible redemption is presented as temporary equity, outside of the shareholders' equity section of our condensed balance sheet.***
>
> …
>
> ***Net Income (Loss) Per Ordinary Share***
> We apply the two-class method in calculating earnings per share. Net income per ordinary share, basic and diluted for Class A redeemable ordinary shares is calculated by dividing the interest income earned on the Trust Account by the weighted average number of Class A redeemable ordinary shares outstanding since original issuance. Net loss per common share, basic and diluted for Class B non-redeemable ordinary shares is calculated by dividing the net income (loss), less income attributable to Class A redeemable ordinary shares, by the weighted average number of Class B non-redeemable ordinary shares outstanding for the periods presented.
>
> ***Recent Accounting Standards***
> Management does not believe that any recently issued, but not yet effective, accounting standards, if currently adopted, would have a material effect on our

condensed consolidated financial statements.

…

*Recent Accounting Pronouncements*
Our management does not believe there are any other recently issued, but not yet effective, accounting pronouncements, if currently adopted, that would have a material effect on our consolidated financial statements.

…

*Class A Ordinary Shares Subject to Possible Redemption*
**The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."** Ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events. ***Accordingly, at December 31, 2020, 17,312,211 Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's consolidated balance sheet.***

(Emphasis added.)

### 1Q21 Quarterly Report

61.     On May 24, 2021, VIH filed its previously delayed Form 10-Q for the quarter of ended March 31, 2021 (previously defined as the "1Q21 Report") with the SEC. The 1Q21 Report restated VIH's balance sheet for the year ended December 31, 2020 as disclosed in the Amended 2020 Annual Report. In addition, the 1Q21 Report disclosed additional paid-in capital of $43,531,612, an accumulated deficit of $38,532,806, and total shareholders' equity of $5,000,003 as of March 31, 2021.

62.     Similar to the Amended 2020 Annual Report, the 1Q21 Report admitted that there was a material weakness in VIH's internal control over financial reporting, but failed to disclose its seriousness by claiming that the "disclosure controls and procedures were not effective, due solely to

17

the material weakness in [their] internal control over financial reporting" and VIH "ensure[d] that [their] financial statements were prepared in accordance with U.S. generally accepted accounting principles. Notwithstanding the material weakness, management has concluded that the financial statements included elsewhere in this Quarterly Report present fairly, in all material respects, our financial position, results of operations and cash flows in conformity with GAAP."

63. The 1Q21 Report also discussed the Class A ordinary shares subject to possible redemption, stating that, in relevant part:

***Class A Ordinary Shares Subject to Possible Redemption***

***The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."*** Class A ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events. ***Accordingly, at March 31, 2021 and December 31, 2020, Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's condensed consolidated balance sheets.***

…

*Recent Accounting Standards*

Management does not believe that any recently issued, but not yet effective, accounting standards, if currently adopted, would have a material effect on our condensed consolidated financial statements.

(Emphasis added.)

## 2Q21 Quarterly Report

64. On August 13, 2021, VIH filed a quarterly report on Form 10- Q for the quarter ended June 30, 2021 (the "2Q21 Report") with the SEC.

65.     The 2Q21 Report disclosed additional paid-in capital of $22,262,164, an accumulated deficit of $17,263,148, and total shareholders' equity of $5,000,001 as of June 30, 2021.

66.     VIH again acknowledged that there was a material weakness in its internal control over financial reporting, but failed to disclose its seriousness by claiming that the "disclosure controls and procedures were not effective, due solely to the material weakness in [their] internal control over financial reporting" and VIH "ensure[d] that [their] unaudited interim financial statements were prepared in accordance with U.S. generally accepted accounting principles. Accordingly, management believes that the financial statements included in this Quarterly Report on Form 10-Q present fairly in all material respects our financial position, results of operations and cash flows for the period presented."

67.     The 2Q21 Report also included similar statements from the Amended 2020 Annual Report and the 1Q21 Report regarding the Class A ordinary shares subject to possible redemption:

*Class A Ordinary Shares Subject to Possible Redemption*

***The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."*** Class A ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events ***Accordingly, at June 30, 2021 and December 31, 2020, Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's condensed consolidated balance sheets.***

(Emphasis added.)

**Prospectus/Proxy Statement**

68.     On September 17, 2021, VIH filed a Prospectus and Proxy Statement with the SEC on Form 424B3 and Form DEFM14A (previously defined as the Prospectus/Proxy Statement), respectively. The Registration Statement was declared effective as of 4:00 p.m. that day.

69.     Shareholders were asked therein to approve a merger with Legacy Bakkt that would result in a surviving entity named Bakkt Holdings, Inc. following domestication. The prospectus offered 25,921,502 Class A common stock shares and 16,516,041 warrants to purchase shares of Class A common stock of VIH. The Registration Statement and Prospectus/Proxy Statement contained materially incorrect historical financial statements and misrepresented that material weaknesses no longer existed except for the period ended December 31, 2020, as described in the Amended 2020 Annual Report.

70.     The Prospectus/Proxy Statement was incorporated into the Registration Statement, which VIH amended on Forms S-4/A on May 26, 2021, July 9, 2021, August 19, 2021, September 3, 2021, and September 16, 2021, prior to it becoming effective.

71.     VIH's Registration Statement registered 25,921,502 shares of Class A common stock and 16,516,041 redeemable warrants.

72.     Neither the Class A common stock nor the redeemable warrants existed prior to the effective date of the Registration Statement.

73.     Upon completion of the Business Combination between VIH and Legacy Bakkt, shareholders in both companies received newly registered shares of Class A common stock and redeemable warrants under the Registration Statement pursuant to the terms of an exchange agreement.

**Post-Merger Restatement of Financial Information**

**3Q21 Report**

74.     On October 13, 2021, Bakkt filed Form 10-Q with the SEC for the quarter ended September 30, 2021 (the "3Q21 Report"). The 3Q21 Report disclosed that Bakkt (and VIH prior to the consummation of the merger) previously misclassified its Class A redeemable shares, which consequently resulted in false financial reporting related to additional paid-in capital, accumulated deficit, and shareholders' equity.

75.     The 3Q21 Report stated that, in pertinent part:

> In connection with the preparation of the Company's financial statements as of September 30, 2021, management determined it should revise its previously reported financial statements. The Company determined, at the closing of the Company's Initial Public Offering and shares sold pursuant to the exercise of the underwriters' overallotment, it had improperly valued its Class A ordinary shares *subject to possible redemption . . . . As a result, management has noted a reclassification adjustment related to temporary equity and permanent equity. This resulted in an adjustment to the initial carrying value of the Class A ordinary shares subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and Class A ordinary shares*.

(Emphasis added.)

76.     Because Bakkt restated its balance sheet for the year ended December 31, 2020, additional paid-in capital was non-existent instead of the previously disclosed $9,860,338, the accumulated deficit was reported as $29,250,419 compared to the previous reporting of $4,861,190, and the $5,000,009 shareholders' equity was annihilated, replaced by a shareholders' deficit of $29,249,901.

77.     The 3Q21 Report stated further, in relevant part:

*Changes in Internal Control Over Financial Reporting*

> There was no change in our internal control over financial reporting that occurred during the fiscal quarter ended September 30, 2021 covered by this Quarterly Report on Form 10-Q that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting. The material weakness discussed below was remediated during the quarter ended September 30,

2021.

*Remediation of a Material weakness in Internal Control over Financial Reporting*
We recognize the importance of the control environment as it sets the overall tone
for the Company and is the foundation for all other components of internal control.
Consequently, we designed and implemented remediation measures to address the
material weakness previously identified and enhance our internal control over
financial reporting. In light of the material weakness, we enhanced our processes
to identify and appropriately apply applicable accounting requirements to better
evaluate and understand the nuances of the complex accounting standards that
apply to our condensed consolidated financial statements, including providing
enhanced access to accounting literature, research materials and documents and
increased communication among our personnel and third-party professionals with
whom we consult regarding complex accounting applications. The foregoing
actions, which we believe remediated the material weakness in internal control over
financial reporting, were completed as of the date of June 30, 2021.

(emphasis in original).

## Shareholder Vote

78.     On October 14, 2021, at the extraordinary general meeting of its shareholders,

VIH's shareholders voted to approve the previously announced merger with Legacy Bakkt.

79.     On October 15, 2021, the Business Combination merger was consummated and

VIH changed its name to Bakkt Holdings, Inc. At this time, a portion of VIH's shares were

exchanged for cash through the exercise of redemption rights and the remaining shares were

exchanged for newly issued shares of Bakkt's Class A common stock.

80.     On October 18, 2021, VIH securities were removed from the NASDAQ and

Bakkt's Class A common stock and warrants began trading on the NYSE under the ticker symbols

"BKKT" and "BKKT.WS", respectively.

## Statement of Non-Reliance

81.     On November 22, 2021, Bakkt filed Form 8-K with the SEC issuing a statement of

*Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed

Interim Review*. It stated as follows:

*Management of Bakkt Holdings, Inc. (the "Company") has re-evaluated the application of ASC 480-10-S99-3A to the accounting classification of the Class A ordinary shares*, par value $0.0001 (the "Class A Ordinary Shares") of VIH Acquisition Impact Holdings ("VIH") prior to the completion of the Merger *(defined below), which were issued in connection with VIH's initial public offering* (the "IPO"), *and has identified errors in the historical financial statements of VIH for the Affected Period (defined below) related to the misclassification (the "Misclassification") of the Class A Ordinary Shares prior to the Merger. Accordingly, the Company has determined that it is appropriate to restate certain of VIH's condensed consolidated financial statements from the Affected Period*. Legacy Bakkt's (as defined below) historical consolidated financial statements are not affected by the Misclassification, and none of the current management of the Company or its Audit Committee (as defined below) had any role in any of the prior accounting and financial reporting determinations of VIH.

*Historically, a portion of the Class A Ordinary Shares was classified as permanent equity to maintain net tangible assets of at least $5,000,001 on the basis that VIH would consummate its initial business combination only if VIH had net tangible assets of at least $5,000,001.* To the Company's knowledge, VIH's management at the time of the IPO evaluated the accounting for the Class A Ordinary Shares at their issuance and believed the accounting treatment to be appropriate at that time. In connection with VIH's condensed consolidated financial statements as of September 30, 2021 and the filing of its Quarterly Report on Form 10-Q filed on October 13, 2021, VIH's management determined it should revise its previously reported financial statements to, among other things, address the Misclassification by noting a reclassification adjustment related to temporary equity and permanent equity. This resulted in an adjustment to the initial carrying value of the Class A Ordinary Shares subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and Class A Ordinary Shares. However, VIH did not restate the historical financial statements because it deemed the adjustment to be immaterial at that time.

WithumSmith+Brown, PC ("Withum") was the independent registered public accounting firm of VIH during the Affected Period and for the life of VIH as a special purpose acquisition vehicle from July 31, 2020 (inception) through the consummation of the Merger. Subsequent to this filing, and based on discussions with Withum, including in relation to Withum's recent discussions with the U.S. Securities and Exchange Commission ("SEC") regarding unpublished but evolving positions expressed by the staff to certain persons, as relayed to the Company by Withum, as well as public reporting regarding such misclassification issues in the SPAC industry as a whole, management made a determination regarding the Misclassification and determined to take the other actions described herein in restating certain of VIH's condensed consolidated financial statements from the Affected Period.

On November 19, 2021, management, after briefing and consulting with the Audit

Committee of the Board of Directors of the Company (the "Audit Committee"), concluded that, *due to the Misclassification, VIH's previously issued (i) condensed consolidated audited financial statements for the year ended December 31, 2020 included in VIH's Annual Report on Form 10-K, initially filed on March 31, 2021 (as amended); and (ii) condensed consolidated unaudited financial statements for the quarterly periods ended March 31, 2021, June 30, 2021 and September 30, 2021 included in VIH's Quarterly Reports on Form 10-Q filed on May 24, 2021, August 13, 2021 and October 13, 2021, respectively (the periods referred to in (i) and (ii), collectively, the "Affected Period"), should no longer be relied upon* based on the facts described below. Further, the Audit Committee, in consultation with management, determined that it is appropriate to restate certain of VIH's condensed consolidated financial statements from the Affected Period.

(Emphasis added.)

**2020 Annual Report and 2021 Quarterly Reports**

82.     On December 7, 2021, Bakkt filed Form 10-Q/A with the SEC restating its quarterly financial statements for the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021.

83.     At the time of the IPO, VIH improperly classified a portion of its Class A redeemable shares as permanent equity resulting in materially incorrect statements of VIH's additional paid-in capital, accumulated deficit, and shareholders' equity. After discussion, management determined that a reclassification adjustment related to temporary equity and permanent equity should be restated for the 1Q21, 2Q21, and 3Q21 financials. As a result, Bakkt had to make significant, material changes to the financial information it previously reported for additional paid-in capital, accumulated deficit, and shareholders' equity.

84.     The *Condensed Consolidated Balance Sheets* showed that additional paid-in capital was $0, accumulated deficit was $42,135,525, and shareholders' equity turned into a shareholders' deficit of $42,135,007, as of September 30, 2021. For the year ended December 31, 2020, the *Condensed Consolidated Balance Sheets* revealed that additional paid-in capital was $0, accumulated deficit was $29,250,419, and shareholders' equity was actually a shareholders' deficit

of $29,249,901.

85.     On December 7, 2021, after the market closed, Bakkt also filed Form 10-K/A with the SEC restating its annual financial statements for the year ended December 31, 2020, which became Bakkt's Second Amended Annual Report for the year 2020. It reported the same changes to Bakkt's additional paid-in capital, accumulated deficit, and shareholders' deficit as the above restated Quarterly Report, *i.e.,* additional paid-in capital was $0, the accumulated deficit was $29,250,419, and shareholders' equity was actually a shareholders' deficit of $29,249,901.

## MATERIAL MISREPRESENTATIONS AND OMISSIONS

86.     In various SEC filings, Defendants caused the Company to issue a series of material misstatements and omitted material facts necessary to make those statements not misleading in light of the circumstances in which they were made.

87.     These material misstatements and omissions created a false impression as to Bakkt's equity, liabilities, Class A redeemable shares, additional paid-in capital, accumulated deficit, shareholders' equity, and overall financial health.

88.     Contrary to Defendants' statements, Bakkt's warrants and Class A redeemable shares were misclassified, which further resulted in the reporting of false financial statements. Defendants also concealed the severity of the company's material weakness in internal controls over financial reporting. These material misrepresentations caused Bakkt's stock price to be artificially inflated throughout the time in issue. When the truth was revealed through multiple corrective disclosures, Bakkt's stock price dropped substantially, causing damage to shareholders and the Company, and leading to a class action against the Company for violations of the securities laws.

**March 30, 2021 – Annual Report**

89.    On March 30, 2021, VIH published its annual report on Form 10-K for fiscal 2020 (the "Annual Report"). Officers of the Company certified that they reviewed the Annual Report and it did "not contain any untrue statement of a material fact or omit to state a material fact" and "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant…"

**Class A Ordinary Shares Subject to Possible Redemption**

90.    VIH's Annual Report provided investors with false and/or materially misleading information about VIH's Class A redeemable shares. In pertinent part, the Annual Report stated that:

> *Class A Ordinary Shares Subject to Possible Redemption*
>
> *The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."* Ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events. *Accordingly, at December 31, 2020, 19,563,518 Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's balance sheet.*

(Emphasis added.)

91.    The above emphasized statements identified in emphasis were false and/or materially misleading because they misrepresented the total amount of Class A redeemable shares that were temporary equity in addition to misrepresenting that the company properly classified

these shares in accordance with GAAP.

92. By making these claims, Defendants caused the Company to deceive its shareholders into believing that only 19,563,518 Class A redeemable shares were temporary equity and that this classification adhered to GAAP.

93. ASC 480-10-S99-3A provides that redemption provisions outside of the issuer's control require common stock subject to redemption to be classified outside of permanent equity (*i.e.,* as temporary equity). Due to the fact that VIH's Class A redeemable shares contained redemption provisions that were outside of the company's control, all of its Class A redeemable shares should have been classified as temporary equity, not just 19,563,518 shares.

94. When Bakkt published its Second Amended Annual Report for fiscal 2020, it confirmed this point: "[m]anagement determined that the ordinary shares issued during the Initial Public Offering can be redeemed or become redeemable subject to the occurrence of future events considered outside of the Company's control. Therefore, Management concluded that the redemption value should include *all* ordinary shares subject to possible redemption, resulting in the ordinary shares subject to possible redemption being equal to their redemption value. *As a result, Management has noted a reclassification error related to temporary equity and permanent equity*. This resulted in a restatement to the initial carrying value of the ordinary shares subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and ordinary shares. Further, due to change in presentation for the Class A ordinary shares subject to redemption, the company also revised its earnings per share calculation to allocate net income (loss) evening to Class A and Class B ordinary shares… In accordance with the SEC and its staff's guidance on redeemable equity instruments, ASC 480, paragraph 10-S99, redemption provisions not solely within the control of the Company require

ordinary shares subject to redemption to be classified outside of permanent equity. *The Company had previously classified a portion of its Class A ordinary shares in permanent equity, or total shareholders' equity*… The Company concluded it should restate its previously issued financial statements by amending Amendment No. 1 to its Annual Report on Form 10-K/A, filed with the SEC on May 24, 2021, *to classify all Class A ordinary shares subject to possible redemption in temporary equity*" (emphasis added).

95.     Accordingly, Bakkt admitted after the fact that a portion of its Class A redeemable shares were improperly classified as permanent equity and previous reporting related to these shares was not in accordance with GAAP.

**Additional Paid-in Capital, Accumulated Deficit, & Shareholders' Equity**

96.     The Annual Report disclosed that additional paid-in capital was $6,002,037, accumulated deficit was $1,002,669, and shareholders' equity was $5,000,004. This financial information was materially false because it misrepresented the true dollar amount of these financial metrics.

97.     Because VIH incorrectly classified a portion of its Class A redeemable shares as permanent equity, the company also provided shareholders with materially false values for additional paid-in capital, accumulated deficit, and shareholders' equity.

98.     Bakkt's Second Amended Annual Report confirmed this point: "[t]he financial statements as of December 31, 2020 have been restated in Note 2 of this Second Amendment, with the restatements resulting in a change in the initial carrying value of the Class A redeemable shares with the offset recorded to *additional paid- in capital (to the extent available), accumulated deficit and Class A ordinary shares*. Further, due to change in presentation for the Class A ordinary shares subject to redemption, the Company also revised its earnings per share

calculation to allocate net income (loss) evenly to Class A and Class B ordinary shares" (emphasis added).

99.     The Second Amended Annual Report also revealed the true amount of additional paid-in capital was $0, the true amount of accumulated deficit was $29,250,419, and there was absolutely no remaining shareholders' equity within the company; instead, there was a shareholders' deficit of $29,249,901.

100.     This financial information materially conflicted with the previous financial statements that were provided to shareholders. Accordingly, Defendants caused the Company to deceive its own shareholders by publishing materially false financial information, which they knew or had reason to know was false at the time the misrepresentations were made.

**Material Weakness of Internal Controls Over Financial Reporting**

101.     The Annual Report failed to provide truthful disclosures related to VIH's disclosure controls and internal controls over financial reporting:

Item 9A. Controls and Procedures.

**Evaluation of Disclosure Controls and Procedures**
Disclosure controls are procedures that are designed with the objective of ensuring that information required to be disclosed in our reports filed under the Exchange Act, such as this Report, is recorded, processed, summarized, and reported within the time period specified in the SEC's rules and forms. Disclosure controls are also designed with the objective of ensuring that such information is accumulated and communicated to our management, including the Chief Executive Officer and Chief Financial Officer, as appropriate to allow timely decisions regarding required disclosure. ***Our management evaluated, with the participation of our principal executive officer and principal financial and accounting officer (our "Certifying Officers"), the effectiveness of our disclosure controls and procedures as of December 31, 2020, pursuant to Rule 13a-15(b) under the Exchange Act. Based upon that evaluation, our Certifying Officers concluded that, as of December 31, 2020, our disclosure controls and procedures were effective***.

…

Changes in Internal Control over Financial Reporting

***There were no changes in our internal control over financial reporting (as such term is defined in Rules 13a-15(f) and 15d-15(f) of the Exchange Act) during the most recent fiscal quarter that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.***

(Emphasis added.)

102.    The  above emphasized statements were materially false and/or misleading because they misrepresented that VIH's disclosure controls and procedures in addition to  its  internal controls over financial reporting were effective.

103.    In truth, there was a material weakness in VIH's internal controls over financial reporting that resulted in five different restated  financial  statement, namely the  two Amended Annual Reports and the three restated financial statements for the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021.

104.    These five restated financial statements confirmed that  the  material  weakness  in internal controls over financial reporting was so serious that it rendered the Company's internal controls ineffective and necessitated a Form 8-K statement of non-reliance.

105.    The  Second Amended Annual Report disclosed that, "[i]n connection with the restatement, our management reassessed the effectiveness of its disclosure controls and procedures for the periods affected by the restatement. As a result of that reassessment, we determined that its disclosure controls and procedures for such periods ***were not effective*** with respect to the accounting for complex financial instruments" (Emphasis added).

106.    In publishing the above misrepresentations, Defendants caused the Company to give a false impression to its shareholders as to the effectiveness of these controls while also failing to disclose the then-existing  risks  surrounding  the  company's  accounting classifications, financial statements, and reliability of financial reporting.

107.    Moreover, Defendants also violated Section 404(a) of the Sarbanes Oxley Act of 2002 and Exchange Act Rules 13a-15 and 15d-15 in addition to the SEC's guidance regarding management's report on internal control over financial reporting under Section 13(a) or 15(d) of the Securities Exchange Act of 1934. Under these rules and regulations, which were reiterated in the SEC's April 12, 2021 Staff Statement, management was required to assess whether prior disclosures needed to be revised *and also needed to evaluate the severity of any control deficiency*. Defendants failed to do this.

**GAAP**

108.    The Annual Report which Defendants caused the Company to issue provided shareholders with materially false and/or misleading statements regarding the company's compliance with GAAP. In pertinent part, the Annual Report reads as follows:

> *Class A Ordinary Shares Subject to Possible Redemption*
>
> *We account for our Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."* Class A ordinary shares subject to mandatory redemption is classified as a liability instrument and is measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that features redemption rights that is either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within our control) is classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. Our ordinary shares feature certain redemption rights that are considered to be outside of our control and subject to occurrence of uncertain future events. Accordingly, Class A ordinary shares subject to possible redemption is presented as temporary equity, outside of the shareholders' equity section of our condensed balance sheet.

(Emphasis added.)

109.    The above emphasized statement was materially false and/or misleading because it misrepresented that VIH's Class A redeemable shares were properly accounted for in accordance with GAAP. This however, was not true.

110.     Due to Defendants' failure to properly comply with GAAP, the Company had to restate its financial reporting for the year ended December 31, 2020 and the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021.

111.     In Bakkt's Form 8-K statement of non-reliance, it explicitly stated that management "has re-evaluated the application of ASC480-10-S99-3A to the accounting classification of the Class A ordinary shares" and concluded that, due to the misclassification, the previously issued financial statements for the year ended December 31, 2020 and the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021 "should no longer be relied upon."

112.     Bakkt's admission confirms the relevant guidance to account for the Class A redeemable shares was provided by ASC480-10-S99-3A, which was available to Defendants at the time that the Annual Report was published. Thus, contrary to the misrepresentation the Defendants caused the Company to publish to its shareholders, Defendants had not complied with GAAP in accounting for the Class A redeemable shares. In making the above misrepresentation, Defendants created a false perception to the Company's shareholders as to the company's compliance with GAAP and the accuracy of its ongoing financial reporting.

**May 21, 2021 – Amended 2020 Annual Report**

113.     On May 21, 2021, after the market closed, VIH published an amended annual report on Form 10-K for fiscal 2020 (the "Amended 2020 Annual Report"). Officers of the Company certified that they reviewed this Report and it did "not contain any untrue statement of a material fact or omit to state a material fact" and "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant…"

**Class A Ordinary Shares Subject to Possible Redemption**

114.    The Amended 2020 Annual Report provided the Company's shareholders with a materially false and/or misleading description of the Class A redeemable shares. Specifically, it read as follows:

> **Class A Ordinary Shares Subject to Possible Redemption**
>
> **The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."** Ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events. **Accordingly, at December 31, 2020, 17,312,211 Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's consolidated balance sheet.**

(Emphasis added.)

115.    The above emphasized statements, were materially false and/or misleading because they misrepresented that VIH complied with GAAP in classifying and accounting the Class A redeemable shares in addition to misrepresenting the true amount of VIH's Class A redeemable shares that were supposed to be classified as temporary equity.

116.    ASC 480-10-S99-3A provides that redemption provisions outside of the issuer's control require common stock subject to redemption to be classified outside of permanent equity, *i.e.,* as temporary equity. Given the fact that VIH's Class A redeemable shares contained redemption provisions that were outside of the company's control, all of VIH's Class A redeemable shares should have been classified as temporary equity, not just 17,312,211 shares. Indeed, the company even admitted in its Second Amended Annual Report that "***[m]anagement***

*has noted a reclassification error related to temporary equity and permanent equity*. This resulted in a restatement to the initial carrying value of the ordinary shares subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and ordinary shares… In accordance with the SEC and its staff's guidance on redeemable equity instruments, ASC 480, paragraph 10-S99, redemption provisions not solely within the control of the Company require ordinary shares subject to redemption to be classified outside of permanent equity. ***The Company had previously classified a portion of its Class A ordinary shares in permanent equity, or total shareholders' equity***… The Company concluded it should restate its previously issued financial statements by amending Amendment No. 1 to its Annual Report on Form 10-K/A, filed with the SEC on May 24, 2021, ***to classify all Class A ordinary shares subject to possible redemption in temporary equity***" (emphasis added).

117.    As a result of the above, Defendants caused the Company to deceive its shareholders not only as to the proper classification of all the redeemable shares, but it also enabled Defendants to further mislead with false financial reporting related to additional paid-in capital, accumulated deficit, and shareholders' equity.

**Additional Paid-in Capital, Accumulated Deficit, & Shareholders' Equity**

118.    The Amended 2020 Annual Report disclosed that additional paid-in capital was $9,860,338, accumulated deficit was $4,861,190, and shareholders' equity was $5,000,009.

119.    This financial information was materially false because it misrepresented the true dollar amount of these financial metrics. Because a portion of its Class A redeemable shares as improperly declared as permanent equity, the Company also provided its shareholders with materially false values for additional paid-in capital, accumulated deficit, and shareholders' equity.

120.   Bakkt's Second Amended Annual Report confirmed that, "[t]he financial statements as of December 31, 2020 have been restated in Note 2 of this Second Amendment, with the restatements resulting in a change in the initial carrying value of the Class A ordinary shares subject to possible redemption with the offset recorded to ***additional paid-in capital (to the extent available), accumulated deficit and Class A ordinary shares***" (emphasis added).

121.   The Second Amended Annual Report further admitted that the true amount of additional paid-in capital was $0, the true amount of accumulated deficit was $29,250,419, and there was absolutely no remaining shareholders' equity within the company; instead, there was an astounding shareholders' deficit of $29,249,901. This financial information directly contradicted the previous financials that were reported to shareholders. By disseminating materially false financial information, which Defendants knew or had reason to know was false, they mcaused the Company to mislead its shareholders as to the Company's true financial state, financial health, and ability to properly comply with GAAP.

**Material Weakness in Internal Controls Over Financial Reporting**

122.   When VIH published its Amended 2020 Annual Report, it disclosed the identification of a material weakness in its internal controls over financial reporting, but concealed the severity of the weakness while simultaneously assuring investors that it "devoted significant effort and resources to the remediation and improvement of our internal control over financial reporting… Specifically, we expanded and improved our review process for complex securities and related accounting standards." However, the material weakness had not been remediated or improved. VIH explicitly stated that the material weakness "resulted in a material misstatement of our warrant liabilities, change in fair value of warrant liabilities, ***Class A common stock subject to possible redemption, additional paid-in capital, accumulated deficit, and related financial***

*disclosures as of and for the period ended December 31, 2020*" (emphasis added). Yet, Defendants went on misstate its Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity for the year ended December 31, 2020 (again) in addition to the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021.

123.    In making these misrepresentations, Defendants deceived the shareholders about VIH's remediation and improvement efforts, the current effectiveness of its internal controls over financial reporting, and their ability to rely on VIH's current and ongoing financial statements.

124.    Defendants further failed to disclose the seriousness of the material weakness by later claiming in the Amended 2020 Annual Report that the material weakness was only related to a "significant and unusual transaction related to the warrants." With this statement, they intentionally and falsely limited the material weakness to the previous reporting related to warrants when, in fact, the material weakness had been and continued to effect the company's ability to accurately classify and account for its Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity.

125.    By making this claim, Defendants materially downplayed and concealed the then-existing risks surrounding VIH's financial statements, financial health, and reliance on previously reported financial statements.

**GAAP**

126.    In the Amended 2020 Annual Report, VIH claimed that, in light of the material weakness that was identified, it "performed additional analysis as deemed necessary to ensure that our financial statements were prepared in accordance with U.S. generally accepted accounting principles." However, this statement was also false because VIH's accounting treatment of its Class A redeemable shares failed to comply with GAAP for four consecutive reporting periods.

127.    Bakkt admitted on its Form 8-K statement of non-reliance that, because the Company failed to comply with GAAP, the following financial statements should no longer be relied upon: (i) condensed consolidated audited financial statements for the year ended December 31, 2020 included in VIH's Annual Report on Form 10-K, initially filed on March 31, 2021 (as amended); and (ii) condensed consolidated unaudited financial statements for the quarterly periods ended March 31, 2021, June 30, 2021 and September 30, 2021 included in VIH's Quarterly Reports on Form 10-Q.

128.    Accordingly, the Amended 2020 Annual Report was materially false and/or misleading at the time it was disseminated to shareholders. In misrepresenting VIH's compliance with GAAP, the Company falsely assured the public that its financial statements were truthful, accurate, and could be relied upon.

**May 21, 2021 – Amended 2020 Annual Report**

129.    On May 21, 2021, after the market closed, VIH published an amended annual report on Form 10-K for fiscal 2020 (the "Amended 2020 Annual Report"). Officers of the Company certified that they reviewed this Report and it did "not contain any untrue statement of a material fact or omit to state a material fact" and "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant…"

**Class A Ordinary Shares Subject to Possible Redemption**

130.    The Amended 2020 Annual Report provided shareholders with a materially false and/or misleading description of the Class A redeemable shares. Specifically, it read as follows:

> *Class A Ordinary Shares Subject to Possible Redemption*
> *The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards*

*Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."* Ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events. ***Accordingly, at December 31, 2020, 17,312,211 Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's consolidated balance sheet.***

(Emphasis added.)

131.    The above emphasized statements, were materially false and/or misleading because they misrepresented that VIH complied with GAAP in classifying and accounting the Class A redeemable shares in addition to misrepresenting the true amount of VIH's Class A redeemable shares that were supposed to be classified as temporary equity.

132.    ASC 480-10-S99-3A provides that redemption provisions outside of the issuer's control require common stock subject to redemption to be classified outside of permanent equity, *i.e.,* as temporary equity. Because VIH's Class A redeemable shares contained redemption provisions that were outside of the company's control, ***all*** of VIH's Class A redeemable shares should have been classified as temporary equity, not just 17,312,211 shares.

133.    The Company admitted in its Second Amended Annual Report that "***[m]anagement has noted a reclassification error related to temporary equity and permanent equity***. This resulted in a restatement to the initial carrying value of the ordinary shares subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and ordinary shares… In accordance with the SEC and its staff's guidance on redeemable equity instruments, ASC 480, paragraph 10-S99, redemption provisions not solely

within the control of the Company require ordinary shares subject to redemption to be classified outside of permanent equity. ***The Company had previously classified a portion of its Class A ordinary shares in permanent equity, or total shareholders' equity***… The Company concluded it should restate its previously issued financial statements by amending Amendment No. 1 to its Annual Report on Form 10-K/A, filed with the SEC on May 24, 2021, ***to classify all Class A ordinary shares subject to possible redemption in temporary equity***" (emphasis added).

134.    Accordingly, the above-referenced representations were materially false and/or misleading at the time they were disseminated to shareholders. In causing the Company to make these misrepresentations, Defendants falsely assured the shareholders that the Company's financial statements were truthful, accurate, and could be relied upon.

**Additional Paid-in Capital, Accumulated Deficit, & Shareholders' Equity**

135.    The Amended 2020 Annual Report disclosed that additional paid-in capital was $9,860,338, accumulated deficit was $4,861,190, and shareholders' equity was $5,000,009. This financial information was materially false because it misrepresented the true dollar amount of these financial metrics because Defendants caused the Company to incorrectly classify a portion of its Class A redeemable shares as permanent equity.

136.    Accordingly, the Company also provided shareholdes with materially false values for additional paid-in capital, accumulated deficit, and shareholders' equity.

137.    Bakkt's Second Amended Annual Report admitted that, "[t]he financial statements as of December 31, 2020 have been restated in Note 2 of this Second Amendment, with the restatements resulting in a change in the initial carrying value of the Class A ordinary shares subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and Class A ordinary shares" (emphasis added).

138.    The Second Amended Annual Report also admitted that the true amount of additional paid-in capital was $0, the true amount of accumulated deficit was $29,250,419, and there was absolutely no remaining shareholders' equity within the company; instead, there was an astounding shareholders' deficit of $29,249,901. This financial information directly contradicted the previous financials that were reported to shareholders.

139.    By disseminating materially false financial information, which Defendants knew or had reason to know was false, they misled shareholders as to the Company's true financial state, financial health, and ability to properly comply with GAAP.

**Material Weakness in Internal Controls Over Financial Reporting**

140.    When VIH published its Amended 2020 Annual Report, it disclosed the identification of a material weakness in its internal controls over financial reporting, but failed to disclose the seriousness of the weakness while simultaneously assuring shareholders that it "devoted significant effort and resources to the remediation and improvement of our internal control over financial reporting… Specifically, we expanded and improved our review process for complex securities and related accounting standards." However, the material weakness had not been remediated or improved. VIH explicitly stated that the material weakness "resulted in a material misstatement of our warrant liabilities, change in fair value of warrant liabilities, Class A common stock subject to possible redemption, additional paid-in capital, accumulated deficit, and related financial disclosures as of and for the period ended December 31, 2020" (emphasis added). Yet, Defendants went on misstate its Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity for the year ended December 31, 2020 (again) in addition to the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021.

141.    In making these misrepresentations, Defendants deceived the shareholders about

VIH's remediation and improvement efforts, the current effectiveness of its internal controls over financial reporting, and their ability to rely on VIH's current and ongoing financial statements.

142.   Defendants further failed to disclose the seriousness of the material weakness by later claiming in the Amended 2020 Annual Report that the material weakness was only related to a "significant and unusual transaction related to the warrants." With this statement, Defendants failed to properly disclose that the material weakness had been and continued to effect the Company's ability to accurately classify and account for its Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity.

**GAAP**

143.   In the Amended 2020 Annual Report, VIH claimed that, in light of the material weakness that was identified, it "performed additional analysis as deemed necessary to ensure that our financial statements were prepared in accordance with U.S. generally accepted accounting principles." However, this statement was also false because VIH's accounting treatment of its Class A redeemable shares failed to comply with GAAP for four consecutive reporting periods.

144.   Bakkt admitted on its Form 8-K statement of non-reliance that, because the Company failed to comply with GAAP, the following financial statements should no longer be relied upon: (i) condensed consolidated audited financial statements for the year ended December 31, 2020 included in VIH's Annual Report on Form 10-K, initially filed on March 31, 2021 (as amended); and (ii) condensed consolidated unaudited financial statements for the quarterly periods ended March 31, 2021, June 30, 2021 and September 30, 2021 included in VIH's Quarterly Reports on Form 10-Q.

145.   Accordingly, the Amended 2020 Annual Report was materially false and/or misleading at the time it was disseminated to shareholders. In misrepresenting VIH's compliance

with GAAP, Defendants caused the Company to falsely assure shareholders that its financial statements were truthful, accurate, and could be relied upon.

**August 13, 2021 – Quarterly Report Q2 2021**

146.    On August 13, 2021, after the market closed, VIH published its quarterly report for the quarter ended June 30, 2021 (previously defined as the "2Q21 Report"). Officers of the Company certified that they reviewed the 2Q21 Report and it did "not contain any untrue statement of a material fact or omit to state a material fact" and "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant…"

**Class A Ordinary Shares Subject to Possible Redemption**

147.    The 2Q21 Report furnished shareholders with materially false and/or misleading statements related the accounting treatment of the Company's Class A redeemable shares. The 2Q21 Report reads, in pertinent part:

> ***Class A Ordinary Shares Subject to Possible Redemption***
> ***The Company accounts for its Class A ordinary shares subject to possible redemption in accordance with the guidance in Accounting Standards Codification ("ASC") Topic 480 "Distinguishing Liabilities from Equity."*** Class A ordinary shares subject to mandatory redemption are classified as a liability instrument and are measured at fair value. Conditionally redeemable ordinary shares (including ordinary shares that feature redemption rights that are either within the control of the holder or subject to redemption upon the occurrence of uncertain events not solely within the Company's control) are classified as temporary equity. At all other times, ordinary shares are classified as shareholders' equity. The Company's ordinary shares feature certain redemption rights that are considered to be outside of the Company's control and subject to occurrence of uncertain future events. ***Accordingly, at June 30, 2021 and December 31, 2020, Class A ordinary shares subject to possible redemption are presented as temporary equity, outside of the shareholders' equity section of the Company's condensed consolidated balance sheets***.

(Emphasis added.)

148.    The above emphasized statements were materially false and/or misleading because they misrepresented that VIH properly accounted for the Class A redeemable shares. Although VIH stated that the accounting for these shares was performed in accordance with GAAP, in truth, ASC 480-10-S99-3A required the entirety of VIH's Class A redeemable shares to be classified as temporary equity.

149.    In direct violation of GAAP, VIH classified a portion of its Class A redeemable shares as permanent equity. In turn, this also caused Defendants to disseminate materially false financial reporting for additional paid-in capital, accumulated deficit, and shareholders' equity.

150.    Bakkt eventually restated its financial statement for the 2Q21 Report to provide shareholders with the correct classification and reporting for its Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity. By making the above misrepresentations, Defendants caused the Company to deceive its shareholders not only about the proper classification of the Class A redeemable shares, but also as to VIH's compliance with GAAP.

**Additional Paid-in Capital, Accumulated Deficit, & Shareholders' Equity**

151.    The 2Q21 Report falsely reported that additional paid-in capital was $22,262,164, accumulated deficit was $17,263,148, and shareholders' equity was $5,000,001. This financial information was materially false because the true dollar amount of these financial metrics was substantially different.

152.    Because VIH incorrectly classified a portion of its Class A redeemable shares as permanent equity, the Company also provided shareholders with materially false values for additional paid-in capital, accumulated deficit, and shareholders' equity.

153.    When Bakkt published its amended quarterly report for the quarter ended

September 30, 2021, it also restated its financial statement for the quarter ended June 30, 2021 ("Q2"). The restatement for Q2 revealed that additional paid- in capital was shockingly reduced from $22,262,164 to $0, accumulated deficit grew from $17,263,148 to $41,652,377, and shareholders' equity of $5,000,001 was eliminated, leaving a shareholders' deficit of $41,651,859. As a result, the Q2 restatement plainly illustrated the false and misleading nature of the Company's previous financial reporting to its shareholders.

**Material Weakness in Internal Controls Over Financial Reporting**

154.    The 2Q21 Report provided shareholders with materially false and/or misleading statements related to the material weakness in VIH's disclosure controls and internal controls over financial reporting. The 2Q21 Report stated, in pertinent part, that:

> *Evaluation of Disclosure Controls and Procedures*
>
> Under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, we conducted an evaluation of the effectiveness of our disclosure controls and procedures as of the end of the fiscal quarter ended December 31, 2020, as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Exchange Act. Based on this evaluation, our principal executive officer and principal financial and accounting officer have concluded that during the period covered by this report, ***our disclosure controls and procedures were not effective, due solely to the material weakness in our internal control over financial reporting described in the Company's Amendment No. 1 to its Annual Report on Form 10-K/A filed on May 21, 2021) (the "Restatement"). In light of this material weakness, we performed additional analysis as deemed necessary to ensure that our unaudited interim financial statements were prepared in accordance with U.S. generally accepted accounting principles. Accordingly, management believes that the financial statements included in this Quarterly Report on Form 10-Q present fairly in all material respects our financial position, results of operations and cash flows for the period presented.***
>
> *Changes in Internal Control Over Financial Reporting*
> Other than as described below, there was no change in our internal control over financial reporting that occurred during the fiscal quarter ended June 30, 2021 covered by this Quarterly Report on Form 10-Q that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting. In light of the Restatement, we plan to enhance our processes to identify and appropriately apply applicable accounting requirements to better evaluate and

understand the nuances of the complex accounting standards that apply to our financial statements. Our plans at this time include providing enhanced access to accounting literature, research materials and documents and increased communication among our personnel and third-party professionals with whom we consult regarding complex accounting applications. ***The elements of our remediation plan can only be accomplished over time, and we can offer no assurance that these initiatives will ultimately have the intended effects.***

(Emphasis added.)

155.     The above emphasized statements, were materially false and/or misleading because the misrepresented the severity of the material weakness in VIH's internal controls over financial reporting. The 2Q21 Report explicitly stated that VIH's disclosure controls and procedures were not effective "***due solely*** to the material weakness in our internal control over financial reporting described in the Company's Amendment No. 1 to its Annual Report on Form 10-K/A filed on May 21, 2021" (emphasis added).

156.     The Amended 2020 Annual Report, however, misleadingly limited the material weakness to a "misapplication in the guidance around accounting for certain of [its] outstanding warrants." The material weakness was not "due solely" to the misapplication of GAAP guidance for the warrants, instead, the material weakness was so pervasive and severe that VIH also violated GAAP in accounting for its Class A redeemable shares. In turn, due to the misclassification of the Class A redeemable shares, Defendants further caused the Company to disseminate false financial reporting for additional paid-in capital, accumulated deficit, and shareholders' equity. This is confirmed by the fact that Bakkt had to amend and restate its financial statements not just for Q2 2021, but also for Q1 2021, Q3 2021, and the year ended December 31, 2020 (again).

157.     In addition, the above statements by Defendants also falsely conveyed that the material weakness had been addressed and improved such that "financial statements included in this Quarterly Report on Form 10-Q present fairly in all material respects our financial position,

results of operations and cash flows for the period presented" and "were prepared in accordance with U.S. generally accepted accounting principles [GAAP]." Contrary to these statements, the material weakness had neither been addressed nor improved to the extent that the financial statements included in the 2Q21 Report fairly presented the company's financial position and cash flows in accordance with GAAP.

158.   Accordingly, Bakkt was forced to restate its financial statements not only for Q2 2021, but also for Q1 2021, Q3 2021, and the year ended December 31, 2020 (again). As a result of these misrepresentations and omissions, the shareholders of the Company were deceived about the breadth and severity of the material weakness.

**GAAP**

159.   The 2Q21 Report also provided shareholders with materially false and/or misleading statements related to VIH's compliance with GAAP. Specifically, the 2Q21 Report reads as follows:

> *The accompanying unaudited condensed consolidated financial statements have been prepared in accordance with accounting principles generally accepted in the United States of America ("GAAP") for interim financial information and in accordance with the instructions to Form 10-Q and Article 8 of Regulation S-X of the U.S. Securities and Exchange Commission (the "SEC"). Certain information or footnote disclosures normally included in financial statements prepared in accordance with GAAP have been condensed or omitted, pursuant to the rules and regulations of the SEC for interim financial reporting. Accordingly, they do not include all the information and footnotes necessary for a complete presentation of financial position, results of operations, or cash flows. In the opinion of management, the accompanying unaudited condensed consolidated financial statements include all adjustments, consisting of a normal recurring nature, which are necessary for a fair presentation of the financial position, operating results and cash flows for the periods presented.*

> …

> *In light of this material weakness, we performed additional analysis as deemed necessary to ensure that our unaudited interim financial statements were prepared in accordance with U.S. generally accepted accounting principles.* Accordingly, management believes that the financial statements included in this

Quarterly Report on Form 10-Q present fairly in all material respects our financial position, results of operations and cash flows for the period presented.

160.    The above emphasized statements, were materially false and/or misleading because they misrepresented VIH's compliance with GAAP and, consequently, the accuracy and reliability of its ongoing financial statements. ASC 480-10-S99-3A required all of VIH's Class A redeemable shares to be classified as temporary equity. However, Defendants violated GAAP by classifying a portion of its Class A redeemable shares as permanent equity. As a result, the Company also reported materially false financial information for additional paid-in capital, accumulated deficit, and shareholders' equity.

161.    This failure by Defendants to ensure that the Company complied with GAAP, forced the Company to again restate its financial statements not only for Q2 2021, but also for Q1 2021, Q3 2021, and the year ended December 31, 2020. By claiming that VIH's financial statements were prepared in accordance with GAAP, Defendants caused the Company to materially misled shareholders about the Company's ability to adhere to GAAP and provide accurate and reliable financial disclosures.

**October 13, 2021 – Quarterly Report Q3 2021**

162.    On October 13, 2021, after the market closed, VIH published its quarterly report on Form 10-Q for the quarter ended September 30, 2021 (the "3Q21 Report"). DOfficers of the Company certified that they reviewed the 3Q21 Report and it did "not contain any untrue statement of a material fact or omit to state a material fact" and "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant…"

**Material Weakness in Internal Controls Over Financial Reporting**

163.    The 3Q21 Report provided shareholders with a materially false and/or

misleading information related to the material weakness in the company's internal controls over financial reporting. The 3Q21 Report stated that, in relevant part:

> *Evaluation of Disclosure Controls and Procedures*
> As required by Rules 13a-15 and 15d-15 under the Exchange Act, our Chief Executive Officer and Chief Financial Officer carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures as of September 30, 2021. Based upon their evaluation, ***our Chief Executive Officer and Chief Financial Officer concluded that our disclosure controls and procedures*** (as defined in Rules 13a-15 (e) and 15d-15 (e) under the Exchange Act) ***were effective.***
>
> *Changes in Internal Control Over Financial Reporting*
> There was no change in our internal control over financial reporting that occurred during the fiscal quarter ended September 30, 2021 covered by this Quarterly Report on Form 10-Q that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting. ***The material weakness discussed below was remediated during the quarter ended September 30, 2021.***
>
> *Remediation of a Material weakness in Internal Control over Financial Reporting*
> We recognize the importance of the control environment as it sets the overall tone for the Company and is the foundation for all other components of internal control. ***Consequently, we designed and implemented remediation measures to address the material weakness previously identified and enhance our internal control over financial reporting. In light of the material weakness, we enhanced our processes to identify and appropriately apply applicable accounting requirements to better evaluate and understand the nuances of the complex accounting standards that apply to our condensed consolidated financial statements, including providing enhanced access to accounting literature, research materials and documents and increased communication among our personnel and third- party professionals with whom we consult regarding complex accounting applications. The foregoing actions, which we believe remediated the material weakness in internal control over financial reporting, were completed as of the date of June 30, 2021.***

(Emphasis added.)

164.    The above emphasized statements, were materially false and/or misleading because they misrepresented the seriousness of the material weakness in internal controls over financial reporting by failing to disclose its true scope and assuring shareholders that it had been

"remediated." Based on the true scope of the weakness, Bakkt's controls were defective, deficient, and completely ineffective.

165.    Yet, shareholders did not learn of the extent and severity of the problem until the truth was revealed in Bakkt's corrective disclosure on November 22, 2021, *i.e.,* when Bakkt issued its Form 8-K statement of non-reliance. It was only at this time that the shareholders learned that the material weakness was greater than the company previously disclosed because additional financial statements had to be restated and could no longer be relied upon. By making the above misrepresentations and omissions, Defendants deceived shareholders about the Company's compliance policies, the reliability of its financial statements, and the severity of the material weakness.

## ADDITIONAL WRONGDOING

166.    Defendants acted with recklessness in that they knew that the Company's internal controls were deficient; knew that its financial statements issued or disseminated in the name of VIH and Bakkt during the time in issue were false and/or materially misleading; knew that such statements or documents would be issued or disseminated to shareholders and the investing public; and knowingly and substantially participated or allowed the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. Defendants participated in the recklessness alleged herein by virtue of their possession of and/or access to information reflecting the true facts regarding VIH's deficient internal controls over financial reporting and accounting for its Class A redeemable shares.

167.    In fact, in VIH's 3Q21 Report filed on October 13, 2021, VIH reported that "it had improperly valued its Class A ordinary shares subject to possible redemption" and "[a]s a result, management has noted a reclassification adjustment related to temporary equity and permanent equity," which resulted in "offset[s] recorded to additional paid-in capital (to the extent available),

accumulated deficit and Class A ordinary shares." Thus, VIH admitted that it did not have any valid, excusable, or justifiable reason for failing to properly classify and account for its Class A redeemable shares in accordance with GAAP.

168.    Like most SPACs, VIH's organizational documents provided that public stockholders could request that VIH redeem all or a portion of such holder's shares for cash if the Business Combination merger was consummated. As the rule holds and has held historically, all SPACs with the typical redemption features in their redeemable shares need to classify all of their redeemable shares as temporary equity and not permanent equity. This classification must occur notwithstanding the typical provision in the SPAC's charter indicating that the SPAC shall not redeem public shares that would cause the company's net tangible assets to be less than $5,000,001 following such redemptions.

**Material Weakness of Internal Control over Financial Reporting**

169.    Due to the financial reporting issues encountered with the Company's warrants, as previously discussed, Defendants were alerted to the fact that there was a material weakness in VIH's internal control over financial reporting as of May 17, 2021, *i.e.*, the day VIH disclosed that its 1Q21 Report would be untimely due to the company reclassifying the warrants.

170.    Because Defendants' material misrepresentations about the Company's warrants could have been avoided through proper education, understanding, and application of then-existing rules and regulations, as of May 17, 2021 Defendants knew or had reason to know that there was a serious and pervasive material weakness in internal controls over financial reporting. Yet, Defendants did not disclose any issue or problem with its disclosure controls when they admitted to incorrectly classifying the warrants on May 17, 2021.

171.    VIH blamed the untimeliness of its 1Q21 Report on the guidance within the SEC's April 12, 2021 Staff Statement. In reality, the SEC's Staff Statement merely reiterated then-existing GAAP guidance that SPACs were to follow when classifying and reporting warrants

including ASC 815-40, which was available to Defendants at all times during the time in issue.

172.    In truth, the SEC's Staff Statement explicitly stated that it was meant to "highlight the potential accounting implications of certain terms that may be common in warrants included in SPAC transactions" and it did not operate to create any new guidance. In addition, ASC 480 also provides relevant guidance for classifying warrants and it was also available to Defendants at all times during the time in issue.

173.    Accordingly, then-existing GAAP guidance was clear that the Company's warrants should have been classified as a liability. As a result of Defendants' misconduct, the 1Q21 Report was untimely because Defendants caused the Company to fail to follow established GAAP guidance, and not because of any new rules created by the SEC's Staff Statement.

174.    When Defendants caused the Company to publish its Amended 2020 Annual Report on May 21, 2021, it disclosed the identification of a material weakness in its internal controls over financial reporting but failed to disclose the seriousness of the weakness while also assuring shareholders that it "devoted significant effort and resources to the remediation and improvement of our internal control over financial reporting."

175.    However, the material weakness had not been remediated or improved and Defendants knew such or had reason to know. Defendants caused the Company to explicitly state that the material weakness "resulted in a material misstatement of our warrant liabilities, change in fair value of warrant liabilities, Class A common stock subject to possible redemption, additional paid-in capital, accumulated deficit, and related financial disclosures as of and for the period ended December 31, 2020".

176.    Yet, Defendants went on to cause the Company to misstate its additional paid-in capital, accumulated deficit, and shareholders' equity for the year ended December 31, 2020

(again) in addition to the quarters ended March 31, 2021, June 30, 2021, and September 30, 2021. Therefore, it is clear that Defendants knowingly or recklessly failed to disclose the severity of the material weakness because they continued to disseminate materially false financial reporting in the exact areas they claimed to have remediated and improved.

177.    Defendants further concealed the severity of the material weakness by later claiming in the Amended 2020 Annual Report that the material weakness was only related to a "significant and unusual transaction related to the warrants." With this statement, Defendants intentionally and falsely limited the material weakness to the previous reporting related to warrants when, in fact, the material weakness had been and continued to affect the Company's ability to accurately classify and account for its Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity.

178.    On October 13, 2021, when Defendants caused the Company to file its 3Q21 Report, VIH disclosed the previous existence of a material weakness in its internal control over financial reporting, but failed to disclose the extent and severity of the material weakness while also claiming that the problem had been "remediated." Specifically:

> We recognize the importance of the control environment as it sets the overall tone for the Company and is the foundation for all other components of internal control. Consequently, we designed and implemented remediation measures to address the material weakness previously identified and enhance our internal control over financial reporting. In light of the material weakness, we enhanced our processes to identify and appropriately apply applicable accounting requirements to better evaluate and understand the nuances of the complex accounting standards that apply to our condensed consolidated financial statements, including providing enhanced access to accounting literature, research materials and documents and increased communication among our personnel and third-party professionals with whom we consult regarding complex accounting applications. The foregoing actions, which we believe remediated the material weakness in internal control over financial reporting, were completed as of the date of June 30, 2021.

179.    Because Defendants set forth the existence of a material weakness and explained its process for designing and implementing measures to correct the issues, demonstrates that Defendants knew or had reason to know of the true nature and extent of the material weakness. The material weakness was not a result of the creation of new regulatory rules or GAAP guidance, but rather was a result of Defendants' intentional failure to apply then-existing rules and regulations.

180.    Accordingly, had Defendants investigated the circumstances of the material weakness related to the warrants and Class A redeemable shares, they would have determined the existence of further material weaknesses. Indeed, VIH went on to restate its Annual Report for the second time in addition to restating its 1Q21 Report, 2Q21 Report, and 3Q21 Report. By concealing the severity of the material weakness, Defendants were able to maintain a significant amount of shareholder enthusiasm and support until the truth was fully revealed on or about November 22, 2021.

181.    In addition to assuring the shareholders of the Company's compliance with GAAP and the reliability its financial statements, Officers of the Company additionally certified that, pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, the following reports "fully complie[d] with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that the "information contained in the Report[s] fairly present[ed], in all material respects, the financial condition and results of operations of the Company[:]" the Annual Report, the Amended 2020 Annual Report, and the Quarterly Reports filed during the time in issue.

182.    In other words, these Officers of the Company engaged in quarterly evaluations of the Company's financial statements and internal controls over financial reporting and still

proceeded to certify the accuracy of these reports and disseminate false and/or misleading information to the shareholders and the investing public.

183.   Defendants' conduct amounts to an extreme departure from the standards of ordinary care to the extent that the severity of the material weakness was either known by Defendants or so obvious that Defendants must have been aware of it. While Defendants created the appearance of full compliance by disclosing that the warrants should have been classified as a liability on May 17, 2021, Defendants completely concealed the existence of any issue related to internal controls over financial reporting at a time when they knew facts or had access to information suggesting that their public statements were not accurate.

184.   Defendants then proceeded to disseminate multiple false and/or materially misleading financial statements – related to the Class A redeemable shares, additional paid-in capital, accumulated deficit, and shareholders' equity – for the exact same reasons that they caused the Company to misclassify its warrants, *i.e.*, a failure to comply with GAAP, a failure to comply with SEC regulations, and a failure to document the prevalence of a serious material weakness in internal controls over financial reporting.

185.   In sum, Defendants acted either intentionally or recklessly in refusing to cause the Company to follow proper accounting guidelines.

**Defendants delayed restating financials until after the Merger and public listings**

186.   Defendants had motive to delay restating VIH's financial statements until after the Business Combination merger with Legacy Bakkt and the public listing of VIH shares on the NYSE.

187.   Defendants caused VIH to incorrectly classified a portion of its shares as permanent equity in order to maintain stockholders' equity greater than $5,000,000 on the basis that its charter permitted it to consummate an initial business combination only if it had net tangible assets of at least $5,000,0001. Thus, Defendants could only complete the Business Combination merger of VIH and

Legacy Bakkt if share redemptions remained below a certain threshold.

188.    This was improper, however, because the prevailing accounting guidance, reiterated in SEC comment letters, made clear that shares issued in the legal form of equity must be classified as temporary equity—not permanent equity—if they are subject to redemption provisions not solely within the control of the issuer, which was the case here.

189.    Later, upon reevaluation, because each share contained a redemption provision, it was determined that all shares must be classified as temporary equity. As a result of this reclassification, VIH's stockholders' equity and net tangible assets were less than $5,000,001 when the Registration Statement became effective.

190.    In fact, as Defendants later caused the Company to admit, stockholders' equity was negative $29,249,901 as of December 31, 2020, negative $62,921,517 as of March 31, 2021, and negative $41,651,859 as of June 30, 2021. But for the admittedly improper classification of shares as permanent equity, VIH would not have had tangible assets sufficient to proceed with the Business Combination merger with Legacy Bakkt.

191.    Further, VIH, prior to its combination with Legacy Bakkt, traded on the Nasdaq Capital Market. Maintaining its listing on this market was a priority for Defendants. Indeed, Defendants warned shareholders and investors in its filings with the SEC that if the Company's securities were "delist[ed]" from the exchange, it could "limit investors' ability to make transactions in our securities and subject us to additional trading restrictions." Defendants further told shareholders and investors that "delist[ing]" could cause VIH to "face significant material adverse consequences, including: a limited availability of market quotations for its securities; reduced liquidity for its securities; a determination that the Bakkt Pubco Class A Common Stock is a 'penny stock' which will require brokers trading in the common stock to adhere to more stringent rules and possibly result in a reduced level of trading activity in the

secondary trading market for the Company's securities; a limited amount of news and analyst coverage; and a decreased ability to issue additional securities or obtain additional financing in the future."

192.   The Nasdaq Capital Market maintains and enforces specific listing requirements, including a minimum amount of shareholder equity of at least $5 million, according to Defendants. Had Defendants correctly accounted for the Company's Class A redeemable shares and/or restated its financial statements in advance of the business combination, VIH would have fallen out of compliance with the Nasdaq Capital Market's listing requirements due to the fact that its true shareholders' equity was negative $29.2 million for fiscal 2020, negative $62.9 million for 1Q21, negative $41.6 million for 2Q21, and negative $42.1 million for 3Q21. In light of the foregoing, Defendants knew that maintaining their listing on the Nasdaq Capital Market was critical to the successful combination with Legacy Bakkt and, in turn, the value of their own personal equity in the combined company.

193.   In addition, Bakkt's Form 8-K statement of non-reliance explicitly stated that, [h]istorically, a portion of the Class A Ordinary Shares was classified as permanent equity to maintain net tangible assets of at least $5,000,001 on the basis that VIH would consummate its initial business combination only if VIH had net tangible assets of at least $5,000,001." Had Defendants correctly accounted for its Class A redeemable shares and/or restated its financial statements in advance of the business combination, the merger would not have occurred.

194.   Therefore, there is also a direct connection between Defendants' wrongful behavior and the Business Combination merger because the misstatements Defendants caused the Company to make also directly related to the success of the merger.

195.   Consequently, Defendants successfully delayed and/or minimized the risk of

delisting and not consummating the Business Combination merger by improperly accounting for its Class A redeemable shares and not correcting it until after the consummation of the Business Combination.

## THE TRUTH BEGINS TO EMERGE

196.   On May 17, 2021, after the market closed, the Company filed a Form NT 10-Q with the SEC, providing notification of its inability to timely file its quarterly report on Form 10- Q with the SEC for the quarter ended March 31, 2021. That filing advised, in relevant part:

> On April 12, 2021, the Staff of the [SEC] issued the "Staff Statement on Accounting and Reporting Considerations for Warrants Issued by [SPACs]" (the "SEC Statement"), which clarified guidance for all SPACs regarding the accounting and reporting for their warrants. Following review of the SEC Statement, the Company reevaluated the accounting treatment of its public warrants and private placement warrants (collectively, the "Warrants") as equity, and concluded that, based on the SEC Statement, the Warrants should be, and should previously have been, classified as a liability measured at fair value, with non-cash fair value adjustments recorded in earnings at each reporting period.

> The Company is currently determining the extent of the SEC Statement's impact on its financial statements, including the financial statements as of and for the fiscal quarter ended March 31, 2021[.]

197.   On this news, the Company's share price fell $0.13 per share, or 1.26%, to close at $10.18 per share on May 18, 2021. Despite this decline in the Company's share price, its securities continued to trade at artificially inflated prices throughout the remainder of the time in issue because of Defendants' continued misstatements and omissions regarding the true scope and severity of the Company's defective financial controls.

198.   For example, on May 24, 2021, Defendants caused the Company to file an amended annual report on Form 10-K/A with the SEC for the quarter and year ended December 31, 2020 (the "2020 10-K/A"). Among other revised results, that filing reported additional paid-in capital of $9,860,338, an accumulated deficit of $4,861,190, and total shareholders' equity of $5,000,009

for December 31, 2020.

199.    The 2020 10-K/A also contained substantively the same statements as referenced above, regarding the Company's accounting for its Class A ordinary shares.

200.    Although the 2020 10-K/A acknowledged that the Company had identified a material weakness in its internal control over financial reporting, Defendants also caused the Company to minimize the severity of the material weakness by stating that it was "due solely to the material weakness in our internal control over financial reporting described below in 'Management's Report on Internal Control over Financial Reporting[,]'" which only stated that the 2020 10-K/A "does not include a report of management's assessment regarding internal control over financial reporting or an attestation report of our registered public accounting firm due to a transition period established by rules of the SEC for newly public companies."

201.    Additionally, Defendants caused the Company's 2020 10-K/A to assure shareholders and investors that "[i]n light of this material weakness, we performed additional analysis as deemed necessary to ensure that our financial statements were prepared in accordance with U.S. generally accepted accounting principles" ("GAAP"); that "[m]anagement has implemented remediation steps to address the material weakness and to improve our internal control over financial reporting"; and that "we expanded and improved our review process for complex securities and related accounting standards."

202.    Also on May 24, 2021, Defendants caused the Company to file a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2021 (the "1Q21 10-Q"). That filing reported, among other results, additional paid-in capital of $43,531,612, an accumulated deficit of $38,532,806, and total shareholders' equity of $5,000,003 for March 31, 2021.

203.    Defendants also caused the Company's 1Q21 10-Q to admit that the Company had identified a material weakness in its internal control over financial reporting, while minimizing the seriousness of that material weakness and assuring shareholders and investors that those controls had been or would be remediated. The 1Q21 10-Q also represented that "[n]otwithstanding the material weakness, management has concluded that the financial statements included elsewhere in this [1Q21 10-Q] present fairly, in all material respects, our financial position, results of operations and cash flows in conformity with GAAP[,]" and that "[o]ur plans at this time include providing enhanced access to accounting literature, research materials and documents and increased communication among our personnel and third-party professionals with whom we consult regarding complex accounting applications."

204.    On August 13, 2021, Defendants caused the Company to file a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2021 (the "2Q21 10-Q"). That filing reported, among other results, additional paid-in capital of $22,262,164, an accumulated deficit of $17,263,148, and total shareholders' equity of $5,000,001 for June 30, 2021.

205.    Defendants also caused the Company's 2Q21 10-Q to admit that the Company had identified a material weakness in its internal control over financial reporting, while minimizing the seriousness of that material weakness and assuring shareholders and investors that those controls had been or would be remediated, including that "management believes that the financial statements included in this [2Q21 10-Q] present fairly in all material respects our financial position, results of operations and cash flows for the period presented."

206.    The statements referenced above were materially false and misleading because Defendants failed to cause the Company to disclose material adverse facts about the Company's

business, operations, and compliance policies. Specifically, Defendants caused the Company to make false and/or misleading statements and/or failed to disclose that: (i) the Company overstated its efforts to remediate its defective financial controls; (ii) the Company downplayed the true scope and severity of its defective financial controls; (iii) there were additional errors in the Company's financial statements related to the misclassification of certain shares issued prior to the Business Combination; (iv) accordingly, the Company would need to restate additional financial statements; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

207.   On October 13, 2021, after the market closed, Defendants caused the Company to file a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2021 (the "3Q21 10-Q"). That filing disclosed that the Company had failed to properly account for the classification of its Class A ordinary shares and would need to revise certain of its previously issued financial statements, stating, in relevant part:

> In connection with the preparation of the Company's financial statements as of September 30, 2021, management determined it should revise its previously reported financial statements. The Company determined, at the closing of the Company's Initial Public Offering and shares sold pursuant to the exercise of the underwriters' overallotment, it had improperly valued its Class A ordinary shares subject to possible redemption . . . . As a result, management has noted a reclassification adjustment related to temporary equity and permanent equity. This resulted in an adjustment to the initial carrying value of the Class A ordinary shares subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and Class A ordinary shares.

208.   As a result, the Company was forced to revise its balance sheet as of December 31, 2020, including, among other changes, additional paid-in capital that was reduced from $9,860,338 to nil, an accumulated deficit that ballooned from $4,861,190 to $29,250,419, and total shareholders' equity of $5,000,009 that swung to a total shareholders' deficit of $29,249,901.

209. On this news, the Company's share price fell $0.47 per share, or 4.73%, to close at $9.46 per share on October 14, 2021. Despite this decline in the Company's share price, its securities continued to trade at artificially inflated prices throughout the remainder of the time in issue because Defendants continued to cause the Company to make misstatements and omissions regarding the true scope and severity of its defective financial controls.

210. The 3Q21 10-Q assured shareholders and investors that Defendants "carried out an evaluation of the effectiveness of the design and operation of our disclosure controls and procedures as of September 30, 2021[,]" and that, "[b]ased upon their evaluation, [they] concluded that our disclosure controls and procedures . . . were effective"; that "[t]here was no change in our internal control over financial reporting that occurred during the fiscal quarter ended September 30, 2021 covered by this [3Q21 10-Q] that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting"; and that "[t]he material weakness . . . was remediated during the quarter ended September 30, 2021."

211. In describing the Company's purported remediation of the material weakness in its internal control over financial reporting, Defendants caused the 3Q21 10-Q to state:

> We recognize the importance of the control environment as it sets the overall tone for the Company and is the foundation for all other components of internal control. Consequently, we designed and implemented remediation measures to address the material weakness previously identified and enhance our internal control over financial reporting. In light of the material weakness, we enhanced our processes to identify and appropriately apply applicable accounting requirements to better evaluate and understand the nuances of the complex accounting standards that apply to our condensed consolidated financial statements, including providing enhanced access to accounting literature, research materials and documents and increased communication among our personnel and third-party professionals with whom we consult regarding complex accounting applications. The foregoing actions, which we believe remediated the material weakness in internal control over financial reporting, were completed as of the date of June 30, 2021.

212. The statements referenced above were materially false and misleading because

Defendants caused the Company to fail to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, Defendants caused the Company to make false and/or misleading statements and/or failed to disclose that: (i) the Company still had defective financial controls; (ii) as a result, the Company would need to restate additional financial statements; (iii) the Company downplayed the true scope and severity of these issues; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

## THE TRUTH FULLY EMERGES

213.    On November 22, 2021, shortly after Defendants had caused the Company to assure shareholders and investors that it had successfully remediated its defective financial controls, Bakkt filed a current report on Form 8-K with the SEC, disclosing that the Company would have to restate certain of its previously-issued financial statements because of errors related to the misclassification of certain shares issued prior to the Business Combination. That filing stated as follows:

> Management of Bakkt . . . has re-evaluated the application of ASC 480-10-S99- 3A to the accounting classification of the Class A ordinary shares, par value $0.0001 (the "Class A Ordinary Shares") of [VIH] prior to the completion of the Merger (defined below), which were issued in connection with VIH's initial public offering (the "IPO"), and has identified errors in the historical financial statements of VIH for the Affected Period (defined below) related to the misclassification (the "Misclassification") of the Class A Ordinary Shares prior to the Merger. Accordingly, the Company has determined that it is appropriate to restate certain of VIH's condensed consolidated financial statements from the Affected Period.

> * * *

> In connection with VIH's condensed consolidated financial statements as of September 30, 2021 and the filing of its Quarterly Report on Form 10-Q filed on October 13, 2021, VIH's management determined it should revise its previously reported financial statements to, among other things, address the Misclassification by noting a reclassification adjustment related to temporary equity and permanent equity. This resulted in an adjustment to the initial carrying value of the Class A

Ordinary Shares subject to possible redemption with the offset recorded to additional paid-in capital (to the extent available), accumulated deficit and Class A Ordinary Shares. However, VIH did not restate the historical financial statements because it deemed the adjustment to be immaterial at that time.

\* \* \*

On November 19, 2021, management, after briefing and consulting with the Audit Committee of the Board of Directors of the Company (the "Audit Committee"), concluded that, due to the Misclassification, VIH's previously issued (i) condensed consolidated audited financial statements for the year ended December 31, 2020 included in VIH's Annual Report on Form 10-K, initially filed on March 31, 2021 (as amended); and (ii) condensed consolidated unaudited financial statements for the quarterly periods ended March 31, 2021, June 30, 2021 and September 30, 2021 included in VIH's Quarterly Reports on Form 10-Q filed on May 24, 2021, August 13, 2021 and October 13, 2021, respectively (the periods referred to in (i) and (ii), collectively, the "Affected Period"), should no longer be relied upon . . . . Further, the Audit Committee, in consultation with management, determined that it is appropriate to restate certain of VIH's condensed consolidated financial statements from the Affected Period. (Emphases added.)

214.    On this news, Bakkt's stock price fell $2.70 per share, or 13.69%, to close at $17.02 per share on November 22, 2021.

215.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the Company and its shareholders have suffered significant losses and damages.

## DEMAND REFUSED

216.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of Defendants' wrongful conduct and breaches of their fiduciary duty to the Company.

217.    Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

218.    Plaintiff is a current shareholder of the Company and has been an owner of

Company stock during the time in issue.  Plaintiff understands his obligation to hold stock throughout the duration of this action and are prepared to do so.

219.    Before filing this derivative action, Plaintiffs first demanded that the Board take action to investigate the misconduct alleged herein and, if warranted, to commence litigation against Defendants.  Specifically, on August 22, 2022, Plaintiffs made a written demand on the Board to investigate and address the misconduct and, if warranted, to commence litigation against Defendants.

220.    Plaintiff's counsel sent a follow-up letter, dated September 16, 2022 (the "September 16, 2022 Letter"), requesting a response to the August 22, 2022 Litigation Demand.

221.    In response to the Litigation Demand, Plaintiffs' counsel received an email dated September 22, 2022 (the "September 22, 2022 Email"), from Jacob Waldman, Of Counsel.  The September 22, 2022 email acknowledged receipt of the Litigation Demand and promised a response.

222.    On December 13, 2022, Plaintiff's counsel received a letter from Michael Carlinsky of Quinn Emanuel Urquhart & Sullivan, LLP (the "December 13, 2022 Letter") rejecting the Litigation Demand.

223.    Defendants admittedly made no effort to bring claims against the three Defendants whom they admit had served on the Company's Board before the Business Combination.

224.    Defendants also admittedly improperly allowed the three Defendants who served on the Company's Board to participate in the review of the Plaintiff's Litigation Demand and in the Board's refusal to act on same.

## COUNT I

### (Against Defendants For Breach Of Fiduciary Duty)

225.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

226.    Defendants owed the Company fiduciary obligations.  By reason of their fiduciary relationships, Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

227.    Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

228.    Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties.  Among other things, Defendants breached their fiduciary duties of loyalty and good faith by allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  Defendants have also failed to act on Plaintiff's Litigation Demand.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

229.    As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages.  As a result of the misconduct alleged herein, Defendants are liable to the Company.

230.    As a direct and proximate result of Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.  Such damage includes, among other things, costs associated with defending and/or settling securities lawsuits and governmental investigations, severe damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

## COUNT II

### (Against Defendants For Waste Of Corporate Assets)

231.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

232.    The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the time in issue.  It resulted in continuous, connected, and ongoing harm to the Company.

233.    As a result of the misconduct described above, Defendants wasted corporate assets by, *inter alia*: (a) paying excessive compensation, bonuses, and termination payments to certain of its executive officers; (b) awarding self-interested stock options to certain officers and directors; and (c) incurring potentially millions of dollars of legal liability and/or legal costs to defend and/or settle actions addressing Defendants' unlawful actions.

234.    As a result of the waste of corporate assets, Defendants are liable to the Company.

235.    Plaintiff, on behalf of the Company, has no adequate remedy at law.

## COUNT III

### (Against Defendants For Unjust Enrichment)

236.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

237.    By their wrongful acts and the omissions of material fact that they caused to be made, Defendants were unjustly enriched at the expense of, and to the detriment of, the Company.

238.    During the time in issue, Defendants either received bonuses, stock options, or similar compensation from the Company that was tied to the financial performance or artificially

inflated valuation of the Company at various times herein or received compensation that was unjust in light of Defendants' bad faith conduct.

239.     Plaintiff, as a shareholder and representative of the Company, seeks restitution from Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by Defendants due to their wrongful conduct and breach of their fiduciary duties.

## COUNT IV

### (Against Defendants For Violations Of
### Sections 10(b) And 21D Of The Exchange Act)

240.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

241.     The Company, along with certain other officers/directors of the Company are named as defendants in a securities class action, which assert claims under the federal securities laws for violations of the securities laws.  When the Company is found liable in the securities class action for these violations of law, the Company's liability will be in whole or in part due to Defendants' willful and/or reckless violations of their obligations as officers and directors of the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(A)     Declaring that Plaintiff may maintain this action on behalf of the Company and that Plaintiff is an adequate representative of the Company;

(B)     Finding Defendants liable for breaching their fiduciary duties owed to the Company;

(C)     Directing Defendants to take all necessary actions to reform and improve the Company's corporate governance, risk management, and internal operating procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the wrongful conduct described herein;

(D)     Awarding contribution against Defendants and in favor of the Company for the damages suffered by the Company;

(E)     Awarding Plaintiff the costs and disbursements of this action, including attorneys', accountants', and experts' fees; and

(F)     Awarding such other and further relief as is just and equitable.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 20, 2023

**GAINEY McKENNA & EGLESTON**

By: */s/ Thomas J. McKenna*
Thomas J. McKenna
Gregory M. Egleston
501 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: egleston@gme-law.com

*Attorneys for Plaintiff*

## <u>VERIFICATION</u>

I, ROBERT DEVEREAUX, declare that I have reviewed the Verified Shareholder Derivative Complaint ("Complaint") prepared on behalf of Bakkt Holdings, Inc. and authorize its filing. I have reviewed the allegations made in the Complaint, and to those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do no have personal knowledge, I rely on my counsel and their investigation and for that reason believe them to be true. I further declare that I am a current holder, and have been a holder, of Bakkt Holdings, Inc. common stock at all relevant times.

_____
ROBERT DEVEREAUX